IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>STRATUS PHARMACEUTICALS, INC., and SONAR PRODUCTS, INC., corporations, and ALBERTO HOYO, and JUAN CARLOS BILLOCH individuals,<br><br>    Defendants. | Civil Action No. 1:17-cv-21659-KMW |

### DEFENDANTS' MOTION TO SEAL OR REDACT
### CONSENT DECREE OF PERMANENT INJUNCTION

Defendants Stratus Pharmaceuticals, Inc. ("Stratus") and Sonar Products, Inc. ("Sonar"), corporations, and Alberto Hoyo and Juan Carlos Billoch, individuals (hereinafter, collectively, "Defendants"), pursuant to Local Rule 5.4 request that the Consent Decree of Permanent Injunction filed by Plaintiff at D.E. 4-1 and any copy of the Consent Decree that may in the future be entered by the Court be filed under seal or redacted.

### BACKGROUND

This case concerns two related corporations: Sonar, a drug manufacturing company based in New Jersey; and Stratus, a drug distribution center based in Miami, Florida. Stratus owns 80% of the stock in Sonar. Hoyo and Billoch are shareholders of Stratus.

Defendants' problems with the FDA began several years ago when Sonar was under the operational control of its former president, Mark Newman. During this time, Stratus, Hoyo and Billoch were not actively involved in Sonar's management. Mr. Newman did not inform them

1

of customer complaints or problems that were occurring at Sonar. Eventually, the FDA's inspections at Sonar revealed some critical observations that Sonar allegedly was not operating in conformity with current Good Manufacturing Practice ("cGMP"). Because Sonar was the sole manufacturer of products being distributed by Stratus, the problems with the products manufactured a Sonar trickled down to Stratus.

Despite support from Stratus, Hoyo and Billoch, Mr. Newman failed to address and correct the cGMP issues at Sonar to the satisfaction of the FDA in a timely manner. Eventually, Sonar fired Newman and replaced him with a new president. Defendants then invested hundreds of thousands of dollars into renovating the manufacturing plant at Sonar. However, it was too late. The FDA requested that the parties enter into a Consent Decree to resolve the forthcoming enforcement action.

The Consent Decree the parties eventually signed was discussed and negotiated under the presumption that both corporate Defendants would stay in business. While it includes some corrective actions that must be taken by Stratus to avoid future cGMP issues, it is mostly focused on preventing the manufacture and distribution of unapproved drugs that were manufactured at Sonar and the manufacture of products in a facility that had several alleged critical cGMP issues.

Pursuant to the parties' agreement, Sonar effectively ceased all manufacturing operations on April 28, 2017. With Sonar's closure, the gravamen of issues addressed by the Consent Decree have been resolved, leaving many portions of the Consent Decree inapplicable. For example, with Sonar no longer manufacturing products, Stratus does not have a stream of unapproved products to distribute. In addition, as a distribution center, the cGMP issues Stratus had were simple reporting issues related to drugs manufactured by Sonar. Accordingly, the

FDA's goals in the instant enforcement action have been accomplished.

## ARGUMENT

### A. Legal Standard for Sealing or Redacting Court Documents

Courts have long recognized a public right of access to many documents filed before them. *See* In re *Alexander Grant & Co. Litig.*, 820 F.2d 352, 355 (11th Cir. 1987) (per curiam). However, the public's right of access to records in civil proceedings is not absolute. *See Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1311 ("right to inspect and copy [judicial records] is not absolute") (citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978)). "Courts have refused to permit their files to serve as reservoirs of libelous statements for press consumption, or as sources of business information that might harm a litigant's competitive standing." *Nixon*, 435 U.S. at 598. The decision to allow or restrict access to judicial records is left to the sound discretion of the court. *F.T.C. v. AbbVie Prods LLC*, 713 F.3d 54, 61 (11th Cir. 2013); *Nixon*, 435 U.S. at 599.

"The test for whether a judicial record can be withheld from the public is a balancing test that weighs the competing interests of the parties to determine whether there is good cause to deny the public the right to access the document." *AbbVie Prod. LLC*, 713 F.3d at 62. The common law right of access to documents involved in litigation may be overcome by a showing of good cause, which requires "balanc[ing] the asserted right of access against the other party's interest in keeping the information confidential." *Romero v. Drummond Co., Inc.*, 480 F.3d 1234, 1245 (11th Cir 2007); *Chicago Tribune v. Bridgestone/Firestone*, 263 F.3d 1304, 1309 (11th Cir.2001). "[W]hether good cause exists ... is ... decided by the nature and character of the information in question." *Id.* at 1315.

In balancing the public interest in accessing court documents against a party's interest in keeping the information confidential, courts consider, among other factors, whether allowing access would impair court functions or harm legitimate privacy interests, the degree of and likelihood of injury if made public, the reliability of the information, whether there will be an opportunity to respond to the information, whether the information concerns public officials or public concerns, and the availability of a less onerous alternative to sealing the documents. *Romero v. Drummond Co., Inc.,* supra.

**B.    Disclosure of the Consent Decree will Cause Substantial Irreparable Harm to Stratus, Outweighing the Public's Need for Access to the Terms of the Consent Decree.**

The FDA's last inspection at Sonar was in 2015. All of the products manufactured by Sonar during the times it was cited by the FDA are now expired, having shelf-lives of two years or less. In addition, Sonar is no longer manufacturing any products. Therefore, there is no risk of harm to the public from products manufactured under the alleged cGMP violations.

By its explicit terms, the Consent Decree requires that its contents be published to all "associated parties," which is broadly defined to include all employees, officers, subsidiaries and affiliates of Defendants. Moreover, all clients of Sonar have already been advised that Sonar has stopped manufacturing not only unapproved drugs but any other products whatsoever. Similarly, Stratus' clients have been advised that it will no longer distribute the products at issue. Accordingly, there is no further public need to know about the reasons for the shutdown of Sonar and the cessation of manufacture of drugs which Plaintiff deems to be illegal, even though other manufacturers are continuing to produce, market and distribute them.

The cGMP violations alleged to have occurred at Stratus concerned failure to report product complaint to Sonar. Those issues were correct years ago. Notwithstanding, to avoid

4

costly litigation, Stratus agreed to the terms of the Consent Decree. However, its entry and public disclosure will have a severely negative impact on the public's perception of Stratus. Stratus anticipates that it will likely lose a substantial number of customers when they learn that it is under a Consent Decree. Its competitors will also likely use the Consent Decree to persuade Stratus' customers to take their business elsewhere. Such a mass exodus of its customers will drive Stratus out of business. It is not in the public's interest to put a company list Stratus out of business. If Stratus goes out of business, the price of drugs it distributes will likely skyrocket. Already the prices of some of the products it has stopped distributed due to this action have increased significantly, affecting such customers as the Veteran's Administration.

To put Stratus or its principals in public view as responsible for past conduct of a former president (Mark Newman) who has been terminated and for cGMP violations of a company which has been shut down gives the appearance of personal liability for corporate negligence of a company with which Stratus no longer has any involvement whatsoever.  Stratus is entitled to move past this enforcement action, which primarily dealt with its subsidiary, in a manner that allows it to remain a viable going-concern.

### C. Proposed Duration of the Seal is Permanent.

Defendants propose that the duration of the seal or redactions be permanent or until such time as the Consent Decree is vacated.

### CONCLUSION

There is good cause for sealing the Consent Decree or, at a minimum, redacting the names of Stratus and the individual Defendants to avoid the substantial and irreparable business harm these parties would suffer if the Consent Decree remains public. The financial viability of Stratus and maintaining individuals' reputations in the industry outweigh the need for public access to the terms of the Consent Decree, in light of the complete shut-down of Sonar, which

5

111766788.1

was the real target of this enforcement action.

## CERTIFICATE OF CONFERRAL

Pursuant to Local Rule 7.1, counsel for Defendants' counsel certifies that she conferred with Plaintiff's counsel in a good-faith effort to resolve the issues raised by this motion, but Plaintiff's counsel does not consent to the relief sought in this motion.

Respectfully submitted,

　　*/s/ Olga M. Vieira*
Olga M. Vieira
Florida Bar No. 029783
CARLTON FIELDS JORDEN BURT, P.A.
100 S.E. Second Street, Suite 4200
Miami, FL 33131
Telephone: (305) 539-7222
Facsimile: (305) 530-0055
Email: ovieira@carltonfields.com

*Attorney for Defendants*

**CERTIFICATE OF SERVICE**

      I CERTIFY that on May 25, 2017, I electronically filed the foregoing with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                                                 */s/ Olga M. Vieira*
                                                 Olga M. Vieira

**SERVICE LIST**
*United States of America v. Stratus, et. al.*
*Case No. 1:17-cv-21659-KMW*

BENJAMIN G. GREENBERG
Acting United States Attorney
Southern District of Florida

JAMES A. WEINKLE
Florida Bar No.: 0710891
Assistant United States Attorney
99 N.E. 4th Street, Suite 300
Miami, Florida 33132
Tel.: (305) 961-9290
James.Weinkle@usdoj.gov

OF COUNSEL:

JEFFREY S. DAVIS
Acting General Counsel
United States Department of
  Health & Human Services

ELIZABETH H. DICKINSON
Chief Counsel
Food and Drug Administration

PERHAM GORJI
Deputy Chief Counsel, Litigation

JOSHUA A. DAVENPORT
Associate Chief Counsel for Enforcement
United States Department of
  Health & Human Services
Office of the General Counsel
Food and Drug Division
10903 New Hampshire Avenue
Silver Spring, MD 20993-0002
Tel.: (301) 796-6717
Fax: (301) 847-8638
joshua.davenport@fda.hhs.gov

FOR PLAINTIFF:

CHAD A. READLER
Acting Assistant Attorney General
Civil Division

MICHAEL S. BLUME
Director
Consumer Protection Branch

MONICA C. GROAT
JACQUELINE BLAESI-FREED
Trial Attorney
Consumer Protection Branch
United States Department of Justice
P.O. Box 386
Washington, DC  20044
Tel.:  (202) 532-4218
Fax:  (202) 514-8742
Jacqueline.M.Blaesi-Freed@usdoj.gov
Monica.C.Groat@usdoj.gov

111766788.1